<tr>
<tr>
<tr>
<tr>
<tr>
<tr>
<tr>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

UNITED STATES OF AMERICA

- against -

LEWIS ALLEN AND LUIS VALERIO,

Defendants.

------------------------------------------------------X

MEMORANDUM
**OPINION AND ORDER**

07 CR 235 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/11/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On April 28, 2008, this Court issued an Opinion and Order (the "April 28th Order"), making certain findings of fact following a *Fatico* hearing held on March 17 and 19, 2008.[1] After the Court issued its decision, the Government submitted a detailed letter dated July 7, 2008, setting forth its views with respect to the upcoming sentences of the defendants, and asking the Court to issue an Amended Opinion withdrawing certain findings related to the Government's alleged misconduct regarding these defendants. Based on the determinations reached in the April 28th Order, defendant Lewis Allen was sentenced to eighty-seven months in custody on July 28, 2008, and defendant Luis

---

[1] Familiarity with the April 28th Order is assumed.

-1-

Valerio was sentenced to ninety-six months in custody on July 30, 2008.

In the April 28th Order, this Court found that Valerio was personally responsible for the distribution of close to four kilograms of crack cocaine, that the distributions made by the Martinez organization were reasonably foreseeable to him, and that he possessed a firearm in connection with his drug distribution activities. These findings caused Valerio to be assigned an offense level of 37 (after reduction for acceptance of responsibility) and a Guidelines range of 262 to 327 months, based on his placement in Criminal History Category III. Allen was also assigned an offense level of 37 (after reduction for acceptance of responsibility) and a Guidelines range of 210 to 262 months in custody, based on his placement in Criminal History Category I.

On July 24, 2007, the Government wrote *Pimentel* Letters to both defendants, which proposed Guideline ranges quite different than those found by this Court after the *Fatico* hearing. These Letters stated that "[t]he offense conduct, *including all relevant conduct* under U.S.S.G. § 1B1.3, involved at least 150 grams but less than 500 grams of cocaine base . . . ." This drug quantity resulted in a final offense level of 29. This offense level would have resulted in a Guidelines range of 135 to 168 months for Valerio and a Guidelines range of 87 to 108 months for Allen. These ranges were between forty and fifty percent lower

than the eventual ranges proved by the Government at the *Fatico* hearing. Both defendants rejected the proposed ranges presented in the *Pimentel* Letters. Nonetheless, both defendants eventually pled guilty to the charges in the Indictment without the benefit of a plea agreement or Guideline stipulation.

Prior to sentencing, defense counsel argued that defendants had been misled because they believed that the Government had made a good faith disclosure of the state of its knowledge at the time of the *Pimentel* Letters. Indeed the *Pimentel* Letters stated "[t]he foregoing Guidelines calculation is based on the facts and information *presently known to the [Government]*."[2] Despite this representation, the Government offered evidence at the March 2008 *Fatico* hearing, less than eight months after it issued the *Pimentel* Letters, proving that defendants were responsible for distributing multi-kilogram quantities of crack cocaine and possessing weapons in furtherance of the conspiracy.

In the April 28th Order, this Court found that defendants had been misled by the Government. This conclusion was based on the fact that at the time the *Pimentel* Letters were written, holding defendants responsible for distributing between 150 and 500 grams of crack cocaine, the Government "knew that defendants were pitchers for the Organization, knew the extent of the

---

[2] *See Pimentel* Letters at 2 (emphasis added).

Organization's narcotics sales, suspected that Valerio was involved in crimes of violence, and had both audio tapes and surveillance records of Valerio engaging in substantial narcotics distribution."[3] I also noted that the Government had already debriefed a cooperator and had "taken down" the Martinez Organization in 2006. I concluded by noting that "[t]here has been no credible explanation of what the Government learned since July of 2007 that justifies its change of position."[4]

The Government has now supplied that explanation. In its July 7, 2008 letter to the Court, the Government apologizes for its failure "to provide a complete and detailed account of the reason for its *Pimentel* calculations."[5] In that letter, the Government explains that a "*Pimentel* letter represents the evidence that the Government would be prepared to establish in a hearing *at or about the time the Pimentel letter is written*."[6] Thus, the Government did not include in its

---

[3] *United States v. Allen*, 550 F. Supp. 2d 494, 510 (S.D.N.Y. 2008).

[4] *Id. See also id.* at 511 ("Prior to the issuance of the *Pimentel* Letters, the Government almost certainly knew all of the relevant facts, yet the letters (allegedly based on the Government's knowledge) did not square with the Government's determination of relevant conduct.").

[5] Letter of July 7, 2008 from the Government to the Court at 1. *See also id.* at 5 ("The Government bears the responsibility for not providing the Court with the complete record of its knowledge and its communication with the defendants during the *Fatico* hearing. As a result of this incomplete record, the Opinion drew erroneous conclusions regarding the Government's alleged mistreatment and misleading of the defendants.").

[6] *Id.* at 8 (emphasis added) ("The purpose of a *Pimentel* letter is to inform a defendant about the state of the Government's proof at the time the *Pimentel* letter is written.").

*Pimentel* Letters information that it had learned, but was not yet prepared to offer as proof at a *Fatico* hearing.[7] In the Government's words "if the Government has not yet come to a determination regarding a witness's credibility, the extent of a witness's knowledge, whether it will continue to debrief the witness, or whether the witness will be offered a cooperation agreement, it does not, nor could it, rely on such witness in a hearing, and thus, for *Pimentel* letter purposes."[8] This statement is the key to the puzzle and also provides important information to the criminal defense bar. The statement in the *Pimentel* Letter that "[t]he foregoing Guidelines calculation is based on the facts and information *presently known to the [Government]*," is inaccurate. What the Government means to say is that "the foregoing Guidelines calculation is based on the facts and information *that the Government is prepared to prove if a Fatico hearing were held today*."

In accordance with this clarified standard, the Government explains that at the time it issued the *Pimentel* Letters in this case, it had only entered into a cooperation agreement with CW-3, who was not a street-level pitcher and who

---

[7] See id. ("[T]he Government does not include in its *Pimentel* calculation information provided by defendants who are not yet available as cooperating witnesses."); *see also id.* at 9 ("[A]t the time the *Pimentel* letters were written, the Government used the reliable and usable evidence it had available and estimated what it believed it could prove at a *Fatico* hearing at that time.").

[8] *Id.*

was not aware of the quantities of drugs for which Valerio and Allen could be held responsible. While it had also debriefed other co-defendants, including CW-1, at the time it wrote the *Pimentel* Letters, the Government had not yet decided to offer these defendants cooperation agreements. Thus, the Government did not rely on information from these cooperating witnesses in formulating the *Pimentel* Letters. Furthermore, cooperating witness, CW-2, who provided detailed information regarding quantities of crack cocaine and guns, fled the jurisdiction at the time Valerio and Allen were arrested and was not debriefed until a month after the *Pimentel* Letters were written. Similarly, CW-4, a new cooperating witness, provided additional information after the *Pimentel* Letters were written.

Based on the clarification provided by the Government, and the clear description of the provable information obtained after the *Pimentel* Letters were written, I now conclude that the Government did not mislead defendants at any point during these criminal proceedings. Had defendants opted to accept the proposed plea offers, which were generous, they would have benefitted greatly. I therefore conclude that it is appropriate to withdraw the April 28th Order and issue an Amended Opinion and Order deleting any criticism of the Government's

conduct.[9] The Amended Opinion and Order will be issued together with this Order. The only remedy offered to defendants as a result of the April 28th Order – withdrawal of their guilty pleas – was not accepted. Thus, neither the instant Order nor the Amended Opinion and Order has any impact on their sentences.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
August 11 , 2009

---

[9]   Accordingly, *United States v. Allen*, 550 F. Supp. 2d 494 (S.D.N.Y. 2008) is hereby withdrawn and is replaced with an Amended Opinion and Order dated August 11, 2009.

-Appearances-

**For the Government:**

Michael Q. English
David M. Rody
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2594/2304

**For Defendant Allen:**

Michael H. Sporn, Esq.
Law Office of Michael H. Sporn
299 Broadway, Suite 800
New York, NY 10007
(212) 791-1200

**For Defendant Valerio:**

Don D. Buchwald, Esq.
Kelley Drye & Warren
101 Park Avenue
New York, NY 10178
(212) 661-0040